IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANTON THURMAN MCALLLISTER,     )
                                )
        Plaintiff,               )
                                )
    v.                           )        1:24CV409
                                )
NAPH CARE, et al.,              )
                                )
        Defendant(s).            )

MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a prisoner of the State of North Carolina formerly housed in the Forsyth County Detention Center, seeks to bring a lawsuit under 42 U.S.C. § 1983 based on an alleged lack of medical care while he was at that facility.  It appears that Plaintiff mailed his lawsuit in two separate envelopes, one containing his Complaint and an application seeking to proceed *in forma pauperis* and the other containing certain exhibits to the lawsuit.  For reasons that are unknown, the Court received the envelope containing the exhibits, but the envelope containing the Complaint and application did not arrive at that time.  The Court, out of an abundance of caution, treated the exhibits as a lawsuit (1:24CV392) under § 1983 and entered a screening Order and Recommendation recommending that the case be dismissed without prejudice to Plaintiff being allowed to refile the lawsuit using the proper forms and either paying the filing fee or requesting *in forma pauperis* status.  On the same day the Order and Recommendation were entered and mailed to Plaintiff, the Court received Plaintiff's other envelope with his Complaint and *in forma pauperis* request, which it used

to open the current action. Plaintiff later filed an objection in 1:24CV392 explaining that there were two envelopes and that they were intended to be part of one lawsuit. Given that fact and the later receipt of the first envelope, the Court will consider the exhibits from 1:24CV392 in conjunction with the Complaint in the present lawsuit. The Court will also order the Clerk's Office to docket a copy of those exhibits in the present case.

Turning now to the Complaint, it names eight corporate, institutional, or individual Defendants based on claims associated with medical treatment Plaintiff received while incarcerated at the Forsyth County Detention Center during December of 2023 and January of 2024. It seeks hundreds of millions of dollars in compensatory and punitive damages as relief.

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" this Complaint. 28 U.S.C. § 1915A(a). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Applicable here, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are

-2-

Case 1:24-cv-00409-CCE-LPA   Document 3   Filed 06/04/24   Page 2 of 10

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

For the reasons that follow, the Complaint should be dismissed pursuant to 28 U.S.C. § 1915A(b) because it fails to state a claim on which relief may be granted.

Overall, the Complaint alleges that Plaintiff is an insulin dependant diabetic who entered custody at the Forsyth County Detention Center on December 7, 2023. (Docket Entry 2 at 10.) Plaintiff allegedly informed unidentified nurses and medical workers of his need for insulin on a repeated basis, but they did not provide him with insulin or other diabetic medications for seven days. (Id.) On December 14, 2023, staff found Plaintiff unconscious on the floor with very high blood sugar and then transported him to a hospital. (Id.; 1:24CV392, Docket Entry 1 at 6.) He allegedly returned to the Detention Center but

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

-3-

still did not receive a proper food tray or regular insulin treatments until around December 20, 2023. (1:24CV392; Docket Entry 1 at 6.) The Complaint claims that Plaintiff continued to have increased neuropathy in his hands and feet, was more insulin dependant, and had chest pain and higher blood pressure at least through the date of the signing of the Complaint, which was February 24, 2024. (Docket Entry 2 at 20, 22.)

The first three Defendants listed in the Complaint are NaphCare, Inc., a corporation providing healthcare services at the Forsyth County Detention Center, and two of its employees, Ms. Correll and Ms. Cowen. (Id. at 2-3, 7.) The Complaint alleges that NaphCare has in place a policy to protect practitioners and patients which requires consent to treatment but that no one provided Plaintiff with a consent form or informed he needed to sign one before receiving treatment until an unnamed nurse told him he needed one for treatment 25 or 30 days after he entered custody on December 7, 2024. (Id. at 10.)

In general, deliberate indifference to a serious medical need can state a claim under § 1983. Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). However, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.1999). Moreover, mere disagreement with treatment received is not enough to state a claim for relief. Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (citing Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir.1975)); United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011). Additionally,

> [t]he Fourth Circuit has conditioned liability for private corporations under 42 U.S.C. § 1983 on the same requirements established for municipal corporations. Rodriguez v. Smithfield Packing Co, Inc., 338 F.3d 348, 355 (4th

> Cir. 2003). Consistent with that view, a *respondeat superior* theory cannot support such liability as a matter of law. Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999). Instead, to establish § 1983 liability for a private corporation, a plaintiff must show that "an official policy or custom of the corporation cause[d] the alleged deprivation of federal rights." Id.
>
> At the pleadings stage, a plaintiff must allege facts to plausibly support "a direct causal link between a [corporate] policy or custom and the alleged constitutional deprivation." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

Parker v. Burris, No. 1:13CV488, 2013 WL 5604622, at *4 (M.D.N.C. Oct. 11, 2013) (unpublished), rec. adopted, slip op. (M.D.N.C. Jan. 13, 2014).

Here, the Complaint attempts to allege that Defendant NaphCare's consent to treatment policy delayed Plaintiff's medical care and injured him. However, nothing in the Complaint alleges that the policy required or even allowed staff to wait for 25-30 days before presenting Plaintiff with the consent to treatment form and, in the mean time, to ignore pleas for treatment or allow him to become dangerously ill with high blood sugar. If anything, the Complaint appears to allege that NaphCare employees at the Detention Center violated or misapplied the policy because it also states that, before finally presenting Plaintiff with the consent to treatment form, unidentified NaphCare staff erroneously told Plaintiff that he had to speak to a mental health provider in order to be treated or that he could not be treated because he had not been processed into the Detention Center. (Id. at 11.) A violation or misapplication of Defendant NaphCare's policy by staff does not state a claim against Defendant NaphCare because it does not support a finding that Defendant NaphCare's policy caused an injury to Plaintiff. Defendant NaphCare is also not liable simply because it

-5-

employed the staff who allegedly misapplied the policy. Theories of *respondeat superior* or liability predicated solely on a defendant's identity as a supervisor do not exist under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). The Complaint states no claim against Defendant NaphCare and the claim against it should be dismissed.

Similarly, the Complaint alleges that Defendant Correll did not properly train nurses at the Detention Center regarding "common sense medical practice" and that nurses under her supervision were the ones who misinformed Plaintiff about needing to see a mental health provider or needing to be processed into the Detention Center before he could receive treatment even though the real issue was the lack of the consent to treatment form which they failed to provide him for nearly a month. (Docket Entry 2 at 10-11.) At no point does the Complaint allege that Defendant Correll was actually and personally aware of Plaintiff's medical issues, what her staff told Plaintiff regarding treatment, or her staff's delayed application of the consent to treatment policy. Instead, it seeks to hold her liable simply because she supervised the nurses directly involved in the lack of care for Plaintiff. However, again, that theory does not exist under § 1983. The Complaint does include the allegation about the lack of proper training. However, it is entirely conclusory on this point with no specific allegations regarding Defendant Correll's training of the nurses or what it involved or did not involve regarding the relevant policies. In particular, it does not include facts establishing that any training was constitutionally deficient. Therefore, the Complaint fails to state a claim as to Defendant Correll.

As to Defendant Cowen, the Complaint is even more deficient, alleging only that she is the Director of Nursing and that she "allowed" those responsible for Plaintiff's actual care to deny Plaintiff treatment due to the consent to treatment issue. (Id. at 11.) However, there is no allegation that Defendant Cowen actually knew of Plaintiff's situation or any denial of medical care due to medical staff not providing a consent to treatment form. Therefore, there is no basis for the conclusory allegation that Defendant Cowen allowed anyone to deny treatment to Plaintiff and the claim against her rests solely on supervisory liability. As such, that claim fails as a matter of law.

The next set of Defendants in the Complaint are Forsyth County Sheriff Bobby Kimbrough, Jr., his Chief Deputy and second in command R. Joyner, and his third in command Colonel H. Gray. The Complaint also names the Forsyth County Sheriff's Department itself as a Defendant.

The Complaint names Forsyth County Sheriff Bobby Kimbrough as a Defendant in both his individual and official capacities, but the Forsyth County Sheriff's Office in its official capacity only. Under North Carolina law, Defendant Kimbrough, as Sheriff, controls the operations of the Detention Center and possesses final policymaking authority. See Cobbs ex rel. Cobbs v. County of Guilford, No. 1:10CV806, 2012 WL 3113141, at *2 (M.D.N.C. July 31, 2012) (unpublished), rec. adopted as modified, 2012 WL 4508106, (M.D.N.C. Sept. 28, 2012) (unpublished). Therefore, any official capacity claim against the Sheriff's Office is duplicative of the official capacity claim against Defendant Kimbrough and the Sheriff's Office should be dismissed from the case for that reason. The Court will

consider the allegations against both the Sheriff's Office and Defendant Kimbrough in determining whether the Complaint states a claim against Defendant Kimbrough.

Turning now to Defendants Kimbrough, Joyner, and Gray, the Complaint contains allegations similar to those against Defendants Correll and Cowen in that it alleges that these Defendants created or oversaw the enforcement of policies in the Detention Center and that they "allowed" Plaintiff to remain unprocessed at the Detention Center for 25-30 days, resulting in the denial of medical care described above and Plaintiff's absence at a probable cause hearing. (Docket Entry 2 at 7-8, 12-14.) It makes a similar allegation as to the Forsyth County Sheriff's Office and the processing policy. (Id. at 8, 15.) As for the probable cause hearing, there is no other mention or allegation regarding that hearing and it is entirely unclear how any issue with processing caused Plaintiff to miss that hearing or resulted in any harm to Plaintiff's legal interests. As for the allegation regarding medical care, portions of the Complaint specifically allege that any issue with processing did not actually cause the lack of treatment despite statements of medical personnel to that effect and that the actual cause was the lack of a consent to treatment form. (Id. at 11.) Further, even if the processing difficulties were involved, nothing in the Complaint establishes that Defendants Kimbrough, Joyner, or Gray participated in processing, knew that Plaintiff was not processed for an extended period of time, or understood that a lack of processing was impeding Plaintiff's medical care. In fact, the Complaint alleges that the Detention Center's handbook promised that prisoners would receive medical treatment and that persons not named as Defendants violated that policy. (Id. at 12-14.) Violations of policy by subordinates do not implicate the

policy makers absent an allegation they knew of or approved of the violation in some way. Therefore, the Complaint does not contain facts establishing the liability of these Defendants and the claims against them should be dismissed.

Finally, the Complaint names Dr. Box as a Defendant and alleges that he treated Plaintiff's diabetes but that in doing so he switched medications, dosages, and times, leading to confusion among medical staff who then failed to provide Plaintiff with the medications. (Id. at 9.) The Complaint also alleges that Defendant Box is providing Plaintiff with increased levels of insulin rather than substituting "something different" that is more effective. (Id.) The first allegation does not allege a failure to treat or deliberate indifference, but instead alleges, at most, negligence or medical malpractice. As stated earlier, such allegations are not sufficient to state a claim under § 1983. As for the second allegation concerning Defendant Box's choice of medication, it also fails to state a claim because it alleges only a disagreement with treatment, not conduct amounting to deliberate indifference. The claim(s) against Dr. Box should be dismissed.

Regarding Plaintiff's request to proceed *in forma pauperis*, § 1915(b)(1) requires that he make an initial payment if funds are available. However, Plaintiff's *in forma pauperis* application reveals that they are not. Therefore, the Court will not order an initial partial payment at this time, but will instead order that Plaintiff's custodian deduct payments from Plaintiff's prisoner account if funds become available.

IT IS THEREFORE ORDERED that *in forma pauperis* status be granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of all deposits to his account starting with the month of July of 2024, and thereafter each time that the amount in the account exceeds $10.00 until the $350.00 filing fee has been paid.

IT IS FURTHER ORDERED that the Clerk's Office docket a copy of the exhibits treated as a Complaint in case 1:24CV392 as exhibits to the Complaint in the present case.

IT IS RECOMMENDED that this action be dismissed pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted.

This, the 4th day of June, 2024.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**