IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANTON THURMAN MCALLISTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:24-CV-409 |
| NAPH CARE, et al., | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION, ORDER, AND JUDGMENT

Catherine C. Eagles, Chief District Judge

The plaintiff, Anton Thurman McAllister, a prisoner of the State of North Carolina, has sued the defendants alleging that they violated his constitutional rights by denying him medical care for his diabetes while he was in pre-trial custody at the Forsyth County Detention Center. Because genuine issues of fact remain on Mr. McAllister's claim against NaphCare, its motion for summary judgment will be denied. But no such issues remain as to the Sheriff, and his motion will be granted. Due to the advanced stage of the case, Mr. McAllister's motions for voluntary dismissal will be denied.

### I.     Procedural History

Soon after the case was filed, and pursuant to 28 U.S.C. § 1915A, the Court dismissed claims against various individual defendants for failure to state a claim. Doc. 7 at 2, 4. The Court allowed *Monell* claims to proceed against the Sheriff and NaphCare premised upon an alleged policy of ignoring requests for medical care. *Id.* at 3, 4.

The Sheriff and NaphCare moved for summary judgment.  Docs. 25, 27.  Mr. McAllister moved for a voluntary dismissal without prejudice.  Doc. 43, 46.  The Magistrate Judge recommended granting the Sheriff's motion and denying the motions by NaphCare and Mr. McAllister.  Doc. 47.  Mr. McAllister filed another motion, Doc. 50, construed by the magistrate Judge as a motion for voluntary dismissal, which the Magistrate judge has also recommended denying.  Text Recommendation 05/04/2026.

NaphCare objects to the recommendation that its summary judgment motion be denied.  Doc. 53.  Mr. McAllister also objects to certain aspects of the recommendation.  Doc.  51.

## II.    Voluntary Dismissal

The Magistrate Judge recommends denying Mr. McAllister's motions because the requirements for voluntary dismissal without prejudice under Rule 41(a) have not been met.  Due to the advanced stage of the case, dismissal without prejudice would not "protect the interests of the defendants."  *Davis v. USX Corp.,* 819 F.2d 1270, 1273 (4th Cir. 1987) (cleaned up).  In his objections, Doc. 51, Mr. McAllister does not object to this recommendation or analysis.[1]  The Court agrees with the Magistrate Judge, and Mr. McAllister's motions for voluntary dismissal will be denied.

---

[1]  In his response to the recommendation, which the court has construed as his objection, Mr. McAllister urges the Court not to make any separate determination about the concerns he has raised in case No. 25-CV-13, challenging sanitation and shower policies at FCDS.  *See* Doc. 51 at 1–2.  The Court has not made any such separate determination here.  Mr. McAllister's third motion for voluntary dismissal, Doc. 50, was filed after entry of the first recommendation, and then construed and addressed in the magistrate judge's May 4, 2026 text recommendation.  *See* Doc. 50 at 10.  Mr. McAllister has not filed any objections to the May 4, 2026 text recommendation.

### III.  Summary Judgment

### A.  NaphCare

The Magistrate Judge concluded that the evidence is sufficient to defeat NaphCare's motion for summary judgment on the *Monell* claim against it.  Doc. 47 at 36–38.  Naph Care objects.

The evidence, accurately summarized in the recommendation, supports the Magistrate Judge's conclusion that "a reasonable fact-finder could determine that a refusal to treat a known diabetic for multiple days, despite his repeated entreaties, because he had not signed a consent form that nobody told him he needed to sign does not qualify as 'rationally related to a legitimate nonpunitive governmental purpose.'" Doc. 47 at 38 (quoting *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (cleaned up)). If credited, Mr. McAllister's evidence shows that this is what happened from the time he was admitted to the jail on December 7, 2023, through the date he was taken to the hospital, on December 13, 2023.  But NaphCare's evidence shows that after he signed a consent form upon his release from the hospital, Mr. McAllister was regularly offered and given insulin, and his conclusory evidence about a lack of medical care thereafter does not create a disputed question of material fact.

The court addresses each time period separately.[2]

---

[2] In a footnote, NaphCare complains that the Magistrate Judge did nothing more than re-examine the plaintiff's complaint.  Doc. 53 at 7 n. 6.  But in fact, the Magistrate Judge relied upon documentary evidence in the record, including Mr. McAllister's sworn statements made in his grievances, *see, e.g.*, Doc. 2-2 at 9, and in opposition to summary judgment.  *See, e.g.*, Doc. 40 at 4–5; Doc. 47 at 17, 20–29.  Courts must consider at summary judgment verified statements

### 1. Time Period Between December 7 and December 13, 2023

As correctly set forth in the recommendation, a Fourteenth Amendment claim by a pretrial detainee for deliberate indifference has four elements:

> [A] pretrial detainee must [show] that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short*, 87 F.4th at 611. In addition, *Monell* liability may be shown where "an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Rodriguez v. Smithfield Packing Co.,* 338 F.3d 348, 355 (4th Cir. 2003) (cleaned up).

The evidence construed in favor of Mr. McAllister satisfies each element of his claim against NaphCare for the time period before December 13, 2023. NaphCare knew plaintiff suffered from a qualifying medical condition, because his booking report stated that he was "insulin dependent," Doc. 28-1 at 1, and NaphCare treated Mr. McAllister at the same facility within the previous six weeks for diabetes, including with daily insulin medication. *See* Doc. 26-1 at 101. Mr. McAllister testifies that he "expressed grave concerns multiple times a day for more than a week," and that NaphCare nurses "only ignored" his need for diabetes medication and insulin. Doc. 28-9 at 6. This evidence, if credited by a jury, would support the conclusion that NaphCare failed to act to appropriately address the serious health risks of diabetes.

---

attached to the complaint as evidence to the extent they are within the plaintiff's knowledge. *See Gowen v. Winfield*, 130 F.4th 162, 175–76 (4th Cir. 2025).

Mr. McAllister has produced evidence that he suffered harm when he had a "possible syncope episode due to high" blood sugar, determined to be 430, upon which he was taken to the emergency room December 13, 2023. Doc. 53-1 at 1169–70; *see* Doc. 26-1 at 37. In addition to this immediate and short-term harm, Mr. McAllister testifies that he has experienced a range of health consequences, including problems with vision, hands, and feet. Doc. 26-1 at 73; Doc. 28-9 at 6–7.

The evidence also permits an inference that NaphCare policy "cause[d] the alleged deprivation of federal rights." *Rodriguez,* 338 F.3d at 355. According to Mr. McAllister, NaphCare providers refused to treat Mr. McAllister's diabetes because he had not signed a new consent form. *See* Doc. 28-9 at 6–7. In addition, Mr. McAllister signed a consent form during his prior treatment for diabetes at the same facility, which did not have an expiration date. Doc. 53-1 at 1057–58. Arguably, NaphCare's failure to treat Mr. McAllister from December 7 through December 13, under the plaintiff's version of the events, is the "kind of 'flagrant violation' for which *Monell* liability is appropriate." Doc. 7 at 3 (quoting *Owens v. Balt. City State's Att'ys Off.,* 767 F.3d 379, 403 (4th Cir. 2014)).

NaphCare's objections are unavailing and most are more appropriately made to a jury. NaphCare maintains that "[f]rom December 8 to December 12, 2023, [Mr. McAllister] continuously and repeatedly refused medical and mental treatment, examination, or assessment." Doc. 53 at 3; *see* Doc. 53 at 7–9, 12–13. This summary of the evidence is not entirely accurate and does not draw plausible factual inferences in favor of Mr. McAllister. Records cited by NaphCare only establish that Mr. McAllister refused to speak with a "mental health" provider, related to "suicide," but they are silent

as to physical health care or diabetes.  Doc. 53-1 at 980, 986, 992.  One "suicide watch progress note" entered December 8 reports he stated "I'm cold" and "take me to the hospital."  Doc. 53-1 at 998.  Another medical record entered December 11 states only he "refused to process," which does not speak to his medical needs.  Doc. 53-1 at 1170.  This evidence leaves genuine issues of material fact, especially in light of Mr. McAllister's own sworn statement that he "expressed grave concerns" about his diabetes during this time period.  Doc. 28-9 at 6.

NaphCare suggests that the court should disregard Mr. McAllister's statements about lack of medical care because they are "self-serving" and "blatantly contradict[ed]" by the evidence in the record," citing cases in this Court and others as examples.  Doc. 53 at 6.  But the cases cited are inapposite because they involved either video evidence, a failure to respond to a summary judgment motion, or "medical records documenting [a] plaintiff's extensive medical treatment," *May v. Vanlandingham*, No. 06-CT-3124, 2008 WL 2278501, at *5 (E.D.N.C. June 3, 2008),[3] none of which are present for the time period from December 7 to December 13.

NaphCare contends Mr. McAllister "did not face a substantial risk of serious harm," because he did not have "insulin-dependent diabetes," require "daily insulin," or "experience life-threatening complication after missing his medications," based upon the opinion of its expert, Dr. Fowlkes.  Doc. 53 at 10–11; *see* Doc. 53 at 14.  This argument,

---

[3] *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (video evidence); *Ramsey v. Bethea*, No. 22-CV-610, 2024 WL 4651819, at *6 (M.D.N.C. Nov. 1, 2024) (same); *Murphy v. Page*, No. 23-CV-963, 2025 WL 3122705, at *1 (M.D.N.C. Nov. 7, 2025) (Mag. J., Mem. Op. & Recommendation) (failure to respond to summary judgment motion).

however, does not account for conflicting evidence in the record, as the Court must do at this stage, such as the reference to "insulin-dependent" on Mr. McAllister's booking sheet and records of daily insulin treatment.  Doc. 28-1 at 1; Doc. 26-1 at 101; *see also* Doc. 53-1 at 1138 (noting Mr. McAllister "has been counseled multiple times on *the need to be consistent with his insulin*" (cleaned up, emphasis added)); *id.* at 1137 (noting Mr. McAllister "states he is insulin dependent").  NaphCare's attempt to distinguish *Scinto v. Stansberry*, 841 F.3d 219, 230 (4th Cir. 2016), which involved a similar failure to treat a diabetic inmate, thus is unsuccessful for the same reason.

NaphCare suggests that harm to Mr. McAllister, if any, resulted from his own refusal to be treated, rather than its own failure to act.  Doc. 53 at 12–16.  That is a factual argument to make to the jury.

NaphCare contends that Mr. McAllister has not shown that NaphCare's policies were the moving force behind a deprivation of rights.  Doc. 53 at 16–19.  But NaphCare concedes that it maintains a policy that a plaintiff "would have to sign a General Informed Consent Form to receive diabetic medications" and that it did not "provide treatment before Plaintiff had an emergent condition."  Doc. 53 at 17–18; *see* Doc. 28-9 at 1.  There are multiple genuine issues of fact that preclude summary judgment on the question of whether these policies caused a deprivation of rights, including the actual severity of Mr. McAllister's condition and the extent of communication about his treatment needs and consent.

Finally, NaphCare draws inferences in its favor and makes assumptions based upon attorney argument, not evidence.  For instance, NaphCare states in its brief that a

7

consent form the plaintiff signed previously "expired upon his release from the facility on October 28, 2023." Doc. 53 at 7. But the form itself does not say anything about expiration, Doc. 53-1 at 1057–58, and NaphCare falls back upon its own "Informed Consent" policy without evidence that such policy was communicated to Mr. McAllister. Doc. 53-3; *see* Doc. 53 at 8.

NaphCare's motion for summary judgment will be denied in part as to Mr. McAllister's claim covering the time period between December 7 and 13.

### 2. Time Period After December 13

The Court departs from the recommendation of the Magistrate Judge where it does not differentiate between the time period before and after December 13.

After Mr. McAllister returned to the hospital, he signed a medical consent form, as documented by NaphCare. Doc. 26-1 at 84, 96–97; Doc. 53-1 at 894–95, 1168. Beginning December 13, the medical records demonstrate NaphCare offered treatment for diabetes daily, and it administered insulin daily, except on days Mr. McAllister refused care. *E.g.,* Doc. 53-1 at 107–16 (medical records stating insulin injections were administered December 13–21); *id.* at 325–37 (medical records documenting glucose readings between 12/13/23 and 3/6/24, as well as dates "insulin given"); Doc. 26-1 at 101–02 (listing diabetes medications ordered for that time period); *see also* Doc 28-5 at 4 (reflecting administration of insulin and normal blood sugar on 12/19/23). In a December 19, 2023, grievance, Mr. McAllister implicitly acknowledged he was being given insulin. Doc. 26-1 at 99 (asking for metformin and stating "I am only becoming more insulin dependent").

8

Mr. McAllister's evidence in opposition is conclusory. He testifies that after he returned from the hospital, "still I received no diet tray or regular insulin treatments until around the 20th of December," Doc. 2-2 at 6, and that after he "sign[ed] the Consent to Treat Form . . . . [NaphCare] deprived me of necessary medical need." *Id.* at 8. But he has pointed to no evidence to specifically contradict NaphCare's evidence that insulin was administered during that time frame. *E.g.,* Doc. 53-1 at 108–16; Doc. 26-1 at 101–02. Nor has he pointed to any evidence showing that once it had a signed consent form, NaphCare had a policy of ignoring requests for medical care, that NaphCare's action or inaction posed an unjustifiably high risk of harm, or indeed that he was harmed at all by any such policy or by any lack of regular care. *See Short,* 87 F.4th at 611 (listing elements of cause of action); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (noting need to show that defendant's policy had a "direct causal link" to his injury).

In other words, for the time period after December 13, there are a number of gaps in Mr. McAllister's evidence that preclude relief. Most critically, Mr. McAllister has not shown that he was harmed by any specific denial of medical care, nor has he identified a policy that resulted in harm to him during this time period. Therefore, NaphCare's motion for summary judgment will be granted in part as to the part of Mr. McAllister's claim alleging constitutional violations after December 13, 2023.

### B. The Sheriff

The Magistrate Judge suggests that the Sheriff is entitled to summary judgment on the *Monell* claim against it because Mr. McAllister has proffered only conclusory

9

allegations about the FCDC staff's awareness of and participation in the denial of his diabetic treatment, in contrast to allegations about NaphCare nurses. Doc. 47 at 40–42. Mr. McAllister's objections do not address the Magistrate Judge's analysis of his claim against the Sheriff, with which the Court agrees. The Court adopts the recommendation in full as to this motion.

It is **ORDERED AND ADJUDGED** that

1. Except to the limited extent noted herein, the Recommendations of the magistrate judge, Doc. 47; Text Recommendation 05/04/2026, are adopted in full.

2. The plaintiff's motions for voluntary dismissal, Docs. 43, 46, 50 are **DENIED**.

3. The defendant Sheriff, Bobby F. Kimbrough Jr.'s, motion for summary judgment, Doc. 27, is **GRANTED** and all claims against him are **DISMISSED** with prejudice.

4. The defendant NaphCare's motion for summary judgment, Doc. 25, is **GRANTED IN PART and DENIED IN PART** as follows:

   a. The motion is **DENIED** as to Mr. McAllister's claim that NaphCare violated his constitutional rights in the way it provided or did not provide medical care for his diabetes between December 7 and 13, 2023. This is the only claim that will proceed to trial.

   b. The motion is **GRANTED** as to Mr. McAllister's claim that NaphCare violated his constitutional rights in the way it provided or did not provide medical care for his diabetes after December 13, 2023.

5.  The Court directs the Clerk to attempt to locate pro bono counsel to represent the plaintiff at trial on the remaining claim against NaphCare.  As time permits, the case will be set for trial.

This the 27th day of May, 2026.

_____
UNITED STATES DISTRICT JUDGE